IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HARRY TRUDRUNG | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:10CV73 |
| | ) | |
| MARION TRUDRUNG | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This action is before the court on motion of Petitioner Harry Trudrung ("Petitioner") for attorney's fees and expenses (Doc. 13) following this court's order to return his minor child, E.T., to Germany pursuant to the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 U.N.T.S. 49 ("Convention"), and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 <u>et seq</u>. ("ICARA"). Respondent Marion Trudrung ("Respondent") has not filed any response to Petitioner's request for attorney's fees and expenses. The motion is ripe for decision.

**I. BACKGROUND**

Petitioner, a United States citizen, and Respondent, a citizen of Germany, were married on February 1, 1993, in Reinheim, Hessen, Germany. They are the natural parents of the

minor child, E.T., who was born in Germany.  Petitioner and Respondent separated in March 2009.

From January 2004 until late 2009, the parties, E.T., and his siblings all lived in Germany.  On or about December 16, 2009, Respondent traveled to Greensboro, North Carolina, with E.T. for a two-week vacation.  Rather than returning to Germany as planned, Respondent and E.T. remained in the United States, and E.T. enrolled at a local high school in January 2010.

On January 27, 2010, Petitioner filed a verified petition, seeking return of E.T. to Germany.  (Doc. 1.)  On February 9, 2010, the court held a show cause hearing on the Verified Petition and conducted an *in camera* examination of E.T. based upon an agreement of the parties.  On February 10, 2010, the court granted Petitioner's Verified Petition and ordered E.T. returned to Germany.  (Doc. 9.)

Petitioner now seeks an award of expenses, including attorney's fees, pursuant to 42 U.S.C. § 11607(b)(3).  (Docs. 11-12.)  The motion includes affidavits of Petitioner and of Petitioner's counsel.  Upon the court's request, Petitioner also filed a supplemental affidavit.  (Doc. 15.)

**II. ANALYSIS**

ICARA provides the following for recovery of attorney's fees and expenses incurred in defense of statutory rights:

> Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3). This provision is intended "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and "to deter such conduct from happening in the first place." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10511 (Mar. 26, 1986).

Based upon the statute, Respondent bears the burden of showing that it would be clearly inappropriate to grant attorney's fees and expenses to Petitioner. Here, however, Respondent has failed to respond to Petitioner's motion. Respondent's action caused Petitioner to incur considerable expenses in this case – a case where the court ordered the return of the child to Petitioner and to Germany, thereby signifying Respondent's actions as wrongful. The court, therefore, finds that Respondent has failed to establish that it would be clearly inappropriate for the court to award attorney's fees and expenses to Petitioner. Thus, the court must now determine the reasonableness of the dollar amount requested by

3

Petitioner for attorney's fees and expenses related to the instant action.

**A.   Attorney's Fees & Expenses**

Petitioner requests $5,852.64 in legal expenses incurred by Petitioner's counsel: $350.00 in court filing costs, $2.64 in research, and $5,500 as a flat fee for attorney's fees. The court finds the court filing costs and research costs reasonable and now turns to the flat fee.

The "lodestar" approach is well established as the proper method for determining reasonable attorney's fees, and courts have applied the lodestar approach in cases involving ICARA. Neves v. Neves, 637 F. Supp. 2d 322, 339 (W.D.N.C. 2009) (listing various ICARA cases applying the lodestar method). The lodestar figure is determined by multiplying the number of hours reasonably expended by a reasonable rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174-75 (4th Cir. 1994). In evaluating whether requested attorney's fees are "reasonable," the United States Court of Appeals for the Fourth Circuit has instructed district courts to be guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the

4

outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008). In applying the lodestar analysis, the court, in its discretion, may reduce the award requested by Petitioner. Hensley, 461 U.S. at 433.

### 1. Reasonableness of Number of Hours

To establish the number of hours reasonably expended, Petitioner must "submit evidence supporting the hours worked." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The number of hours should exclude hours that are "excessive, redundant, or otherwise unnecessary" in order to arrive at the number of hours that would be properly billed to the client. Id. at 434.

In the present case, Petitioner has submitted the affidavits of Afi Johnson-Parris, Esquire ("Johnson-Parris"). (Docs. 11, 15.) In a second affidavit (Doc. 15 ("Supp. Aff.")), Johnson-Parris details her efforts drafting and filing ten documents in this case, as well as coordinating Petitioner's arrival and court preparation, locating E.T. and Respondent in conjunction with the U.S. Marshals Service, obtaining service

upon Respondent after multiple failed attempts, conducting research, and appearing for three hearings. (Supp. Aff. ¶ 3.) All of Johnson-Parris's services were performed over a two-week period due to the expedited nature of the case, resulting in "severe time limitations." (Id.) Johnson-Parris estimates she spent 35 hours for legal services in this case. (Id.) In addition, she estimates her paralegal spent approximately 15 hours providing support, including preparation of exhibits, a trial notebook, and expenditure receipts, and the handling of electronic filing and traditional service of documents. (Id.) Thus, approximately 50 hours were expended for services to Petitioner in this case.

Child abduction cases under ICARA often present novel and complex legal issues not routinely handled by attorneys, Neves, 637 F. Supp. 2d at 343, and this case involved sufficient complexity because Respondent was not able to be served with the petition (because she avoided service) until after issuance of a take custody order by this court. After consideration of the level of difficulty presented in this case and careful review of the affidavits submitted by Petitioner's attorney, the court finds the amount of time reported justifiable and modest.

### 2. Reasonableness of Rate

Once a reasonable number of hours has been determined, the court must determine a reasonable rate. "This determination is

fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances." Rum Creek Coal Sales, Inc., 31 F.3d at 175.

Johnson-Parris, who has been licensed to practice law since 2002, has handled family law cases involving child custody and abduction since 2006. She has practiced in Greensboro, North Carolina since 2007. (Doc. 11 at ¶ 2 ("Johnson-Parris Aff.").) She also charges a flat fee for services rendered "based on the complexity of the case, the time required for the case and the value of the services rendered." (Id. ¶ 3.) Further, she asserts familiarity with the rates charged by similarly situated attorneys, noting hourly rates of $175 to $250 for an attorney and $60 to $75 for a paralegal. (Supp. Aff. ¶ 4.) Even assuming that the low end of the ranges presented are reasonable, Trudrung's flat fee request of $5,500 is well below the amount of the lodestar calculation for 35 hours at $175 per hour and 15 hours at $60 per hour.

In sum, the court concludes that an award of $5,852.64 in attorney's fees and legal expenses is reasonable and appropriate in this case.

**B. Non-legal Expenses**

Petitioner also requests an award of $3,805.30 based upon the following expenses: $2,624.03 for airfare; $714.49 for lodging; $286.96 for rental car expenses; $27.90 for gasoline;

$2.00 for parking; and $149.92 for food.  Petitioner included receipts for these expenditures with his affidavit.  (Doc. 11.) The court finds the expenses for transportation (rental car, gasoline, and parking) and food reasonable.

The court finds the request regarding airfare to be unsupported in full and thus subject to reduction.  The total of $2,624.03 is documented by receipts for (1) a round-trip ticket for Petitioner from February 2 until February 17, 2010 at $938.85 and (2) a one-way ticket each for Petitioner and E.T. to Germany on February 11, 2010 at $1,685.18.  Based upon the documentation provided, Petitioner has not demonstrated that the return portion of the roundtrip ticket was non-refundable and thus ineligible for exchange so as to avoid additional charges. Consequently, the court will reimburse Petitioner for the roundtrip ticket and the full amount of E.T.'s one-way ticket for a total of $1,781.44.

Additionally, a portion of the lodging expenses have not been demonstrated as reasonable in light of the statute's language that the expenses "related to the return of the child." See 42 U.S.C. § 11607(b); Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir. 2004) (acknowledging district court scrutinized claimed fees and expenses to determine necessity and affirming district court's award).  Included in Petitioner's request are $110.50 for long-distance telephone charges.  Petitioner has not

8

provided any evidence that these telephone costs related to the instant action.  Thus, the court will deduct $110.50 from the lodging costs and finds the remaining $603.99 reasonable.

In sum, the court finds $2,852.21 in non-legal expenses to be reasonable and necessary to Petitioner's efforts to have his child returned to Germany.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Petitioner's motion for attorney's fees and expenses (Doc. 11) is GRANTED in the amount of $5,852.64 for legal expenses and $2,852.21 for non-legal expenses, for a total of $8,704.85.

/s/   Thomas D. Schroeder
United States District Judge

July 21, 2010